# STONE & MARBLE MASONS AGREEMENT

## (WASHINGTON CHAPTER)

Between

### BRICKLAYERS & ALLIED CRAFTWORKERS

### LOCAL #1 MD, VA & DC

And

_Brisk Waterproofing_
(NAME OF CONTRACTOR)

**Effective: May 1, 2001 – April 30, 2004**


PLAINTIFF'S EXHIBIT A

## AGREEMENT

**THIS AGREEMENT**, made and entered into this 1st day of May, 2001 by and between the Bricklayers & Allied Craftworkers – Local #1 MD, VA & DC (hereinafter referred to as "the Union"), party of the first part, and _____ (hereinafter referred to as "the Employer"), party of the second part.

## WITNESSETH:

**WHEREAS**, the Union is desirous of establishing rules of employment of certain stone and marble masons (hereinafter referred to as "Masons") in the Metropolitan Area of Washington, DC, which area is fixed by the Constitution of the Union as comprising of the District of Columbia, the counties of Loudoun, Fairfax, Arlington, Fauquier, Prince William, Rappahannock, Stafford and the City of Alexandria in the Commonwealth of Virginia, and the counties of Montgomery, Prince George's, Charles, and St. Mary's, as well as the district of Columbia Training School at Laurel, in the State of Maryland, and

**WHEREAS**, the Employer is desirous of establishing the conditions and rules under which members of the Union will accept employment,

**NOW THEREFORE**, in consideration of these premises, the parties hereto agree to agree and promise as follows:

**FIRST:** Stonemasonry, for the purposes of this Agreement, shall be defined as follows:

(a) The laying of rubble work, with or without mortar; setting all cut stone, marble, slate, flagstone or other stone domestic products for use on the exterior or in the interior of any building or structure designated by the architect as or customarily called "stone" in the building trade; cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds, joints or reveals and the cutting of drafts for plumbing purposes; and the cleaning and cutting of joints and the pointing of all stone work. All of the said operations shall apply to work on buildings, sewers, bridges, railroads, or other structures of any kind whatsoever, either of a public or private nature.

(b) It is specifically understood that the above definition shall include the cutting, setting and pointing of cement blocks and all artificial stone, slate or marble and kindled products, either interior or exterior, when required to be set by the usual method or custom of stonemason or marblesetter. The erection of all pre-cast floors and cast partition walls, the parching, cleaning, pointing and caulking shall also be included in the above definition.

(c) The work of stonemasonry shall also include pointing, caulking and cleaning which shall consist of but not be limited to the following work procedures and installation of the following materials:

1

 (1) The pointing, caulking, and cleaning of all types of masonry, caulking of all window frames encased in masonry or brick, stone or cement structures, including all grinding and cutting out on such work and all sand blasting, steam cleaning and gunite work.

 (2) The pointing, cleaning, and weatherproofing of all buildings, grain elevators, and chimneys built of stone, brick, or concrete. It shall include all grinding and cutting out, sand blasting and gunite work on same.

 (3) This is not to be construed as denying the rights of the brick or stonemason members to apply themselves at this branch of trade.

(d) Marble Masonry work shall, for the purposes of this agreement, be defined as follows:

 (1) The carving, cutting, and setting of all marble, slate, stone, albereen, carrara, saionyx, vitrolite, and similar opaque glass, scagliola, marbleithic, and all artificial, imitation or case material of whatever thickness or dimension. This contract shall also apply to all work of every description wherever required with respect to the above operations, including all polish, honed or sand finish; and it shall likewise apply to the cutting and fitting of the above materials, after the same shall have left the mills or shop and to the laying of all marble tile, slate tile and terrazzo tile.

 (2) Foremen over any marble masonry shall be made marble setters and at no time shall anyone other than a competent marble setter act as foreman on any marble masonry.

 (3) All drilling of holes for anchoring and fixtures must be done on the job by marble masons or their finishers.

**SECOND:** (1) The Employer recognizes the Union as the exclusive representative of all employees covered by this Agreement for all purposes of collective bargaining.

 (2) The Union recognizes the named Contractor as the representative of his Company for the purpose of collective bargaining.

 (3) The Employer and the Union agree that there will be no discrimination in hiring or employment, or in Union membership, because of race, color, creed, national origin, or gender.

**THIRD:** Stonemasons and Marble masons shall have the right to use any and all tools and instruments which they consider necessary and appropriate for the proper performance of their work. All contractors shall provide "bankers" when a reasonable amount of cutting is required.

**FOURTH:** All cement that is used for backing up external walls, the building or party walls, columns, girders, beams, floors, stairs and arches, which include grouting, parging and dry packing, shall be controlled by masons and the time involved in the use of same shall be paid for at the highest hourly rate.

**FIFTH:** The Union shall not be required to furnish workmen to any employer who is not a signatory to this Agreement.

**SIXTH:** The Union agrees that there shall be no limitations as to the amount of work any member shall perform during the working day.

**SEVENTH:** It is agreed that no person shall have the right to interfere with or talk to any workman furnished pursuant to this Agreement except the employing contractor or his foreman and the accredited representative of the Union. Masons shall be employed by the contractor unless the foreman is ordered to do so. All orders to workmen, including orders for discharge, shall be passed from the employing contractor through the foreman to the workman.

**EIGHTH:** The regular work week shall be forty hours divided into five days at eight hours per day, commencing at 7:30 a.m. until 4:00 p.m., during which time each workman shall be entitled to thirty minutes for his lunch period. Any work performed other than between the hours of 7:30 a.m. and 4:00 p.m., Monday through Friday, or in excess of forty hours, or on any Saturday, shall be paid for at one and one-half times the established hourly rate, and any work performed on any Sunday or holiday shall be paid for at double the established hourly rate, except that in the event that Daylight Savings time shall be retained on a year round basis, and it shall be determined for reasons of safety during the months of December, January and February, the starting hour may be delayed to 8:00 a.m. and the ending hour may be 4:30 p.m., and if job conditions warrant, the foreman or shop steward may call the Business Agent for permission to delay the starting time to 8:30 a.m. and end at 5:00 p.m. without liability on the part of the employer to pay more than the established hourly rate and except further, if the majority of masons and related trades on any job site elect to do so, between April first and October first of each year, the working hours shall be 7:00 a.m. to 3:30 p.m., including a thirty minute lunch period.

**NINTH:** The rate of pay and other benefits for journeymen is hereby established as follows:

  (a) Hourly rate from May 1, 2001 through April 30, 2002 shall be $24.62 per hour. A foreman shall receive not less than $2.00 above the hourly rate established.

  (b) The hourly rate for Stone and Marble apprentices shall be as follows:
   0 to 12 months, 50% of journeyman's pay
   12 to 18 months, 60% of journeyman's pay
   18 to 24 months, 70% of journeyman's pay
   24 to 30 months, 80% of journeyman's pay
   30 to 36 months, 90% of journeyman's pay

  (c) No member of the Union shall perform any work for any employer on Saturdays, Sundays, or any holiday specified herein unless the employer notifies the Management Committee of the Union no later than noon of the day preceding such Saturday, Sunday or holiday work, and permission for such Saturday, Sunday or holiday work has been granted by the Management Committee of the Union or by the President thereof and which permission may be granted only in the discretion of said Management Committee or President.

3

(d) The Employer agrees that in addition to the hourly rate as established herein he will pay to the Pension Fund established by the Union, the sum of $2.80 for each hour of pay computed at straight time worked by each mason and the sum of $4.10 per hour to the Health and Welfare Fund established by the Union, computed on the same basis, the sum of $1.00 to the Bricklayers & Trowel Trades International Pension Fund, and the further sum of $.35 per hour to the Training Fund established by the Union computed on the same basis, and the further sum of $.03 per hour computed on the same basis, to the CPP Fund and the further sum of $.05 per hour computed on the same basis, to the International Masonry Institute (IMI). The employer shall deduct $.01 per hour per man from the hourly rate of $24.62, computed on the same basis, as the BAC/PAC contribution and the sum of $.02 per hour per man from the hourly rate of $24.62, computed on the same basis, as the Local PAC contribution. The contractor will deduct from each mason's pay $1.15 per hour worked, computed on the same basis, as Dues Check-off. Payment of all the sums so computed shall be made by the employer to the Union office or at such other place as the Union shall determine and shall notify the employer of such determination in writing and all payments shall be made not later than the 25th day of the month following the month in which the wages are paid. If a payment to the Funds is not made on time, there shall be a liquidated damage penalty of twenty percent (20%) of all money that is past due. Said twenty percent (20%) shall be adjusted from time to time as agreed in writing between the employer and the Union upon notification by the trustees of the funds mentioned above that any employer has failed to make the required payment within thirty (30) days of the due date in accordance with the above, the Union may remove all workmen furnished pursuant to the terms of this contract. Employers agree to be bound by all terms and conditions of the Trust Fund Agreements governing the above-mentioned funds and said terms and conditions are deemed to be incorporated herein by reference.

There will be a one dollar and sixty-five cent ($1.65) raise effective May 1, 2001, a one dollar and sixty-five cent ($1.65) raise effective May 1, 2002 and a one dollar and sixty-five cent ($1.65) raise effective May 1, 2003. The distribution of the raise will be determined by the membership and employers will be notified of the distribution at least thirty (30) days prior to the date the changes are to take effect.

The appointment of the following individuals to serve as Employer Trustees of the Stone and Marble Masons of Washington, DC, BAC, Pension Trust Fund are hereby made, acknowledged, and ratified:

Brett Rugo

4

Joseph Pagliaro
Mike Bratti

The appointment of the following individuals to serve as Employer Trustees of the Health & Welfare Fund of Washington, DC, BAC, are hereby made, acknowledged, and ratified:

Brett Rugo
Joseph Pagliaro
Mike Bratti

The above-named Trustees shall serve until death, resignation, incapacitation, or removal as herein provided. In the event an Employer Trustee resigns, dies, or becomes incapacitated, the remaining Employer Trustees shall appoint an individual to serve as interim Employer Trustee until such time as the parties hereto execute a written instrument appointing a new Employer Trustee. An Employer Trustee may resign by delivering written notice to the remaining Trustees to take effect not later than 30 days after delivery thereof. An Employer Trustee may be removed and replaced by written instrument executed by the parties hereto.

(e) Wages shall be paid in an envelope clearly designating the week ending date, the name of the employer, the name of the employee, the number of hours worked, rate per hour, all deductions, travel expenses and the total amount. Workmen shall receive their pay not later than 4:00 p.m. on the day designated as payday, and if the pay is received later than the designated time, he shall be paid the prevailing rate for each hour or fraction thereof after the said hour that he is required to wait for his pay up to two hours, and after two hours, he shall be paid at double the prevailing rate for each hour or fraction thereof.

(f) The employer agrees to pay to each workman who travels more than 25 miles and less than 50 miles from the DC Line into the States of Maryland and Virginia (Zone 1), at the rate of $9.00 per day. The employer further agrees to pay each workman who travels more than 50 miles and less than 75 miles from the DC Line into the States of Maryland and Virginia at the rate of $18.00 per day. On projects traveled beyond the 75-mile radius, the rate shall be $18.00 to and from the job site plus full room and board.

**TENTH:** Five-day work week (shift work).

(a) Shift work is renovation, restoration, remodeling or new construction work that cannot for one reason or another be performed during normal working hours. Only in those cases where required by the owner/client, general contractor or bid specification to perform renovation, restoration, remodeling or new construction work outside the regular working hours of 6:30 a.m. and 4:00 p.m., the Employer shall be permitted to operate on a five-day

5

work week, which could include Saturday and Sunday at the straight time rate of pay plus fifteen percent (15%). When the Employer establishes an alternate five-day work week pursuant to this exception, the sixth (6th) consecutive day of work shall be paid at time and one-half, the seventh (7th) consecutive day shall be paid at double time, regardless of the day of the week, and work in excess of 40 hours at any time during that alternative five-day work week shall be at time and one-half.

(1) An employee working day shift must receive time and one-half if he works the night shift.

(2) Any shift worked over eight (8) hours per twenty-four (24) hour period shall be at the time and one-half rate, unless a different shift schedule (e.g., four ten-hour days) has been agreed to by the Union and the employer.

(3) Second and third shifts shall be not less than seven (7) nor more than eight (8) hours.

(4) A lunch period shall be taken midway in the shift.

(5) Shifts may be initiated by the Employer but, once initiated, must continue for a period of not less than three (3) working days.

(6) The Employer shall notify the Union in writing of starting and quitting time of all second or third shifts at least forty-eight (48) hours in advance of the initiation of said shifts.

(7) Whenever it becomes necessary for employees to change shifts, the Employer will attempt to make such change over the weekend.

(8) When a holiday falls on a work day during the week, the Contractor has the option to work four 10-hour shifts at the man's option for a 40-hour pay week, and not work on the holiday.

**ELEVENTH:** Legal holidays shall be all Sundays of the year, New Year's Day, Marting Luther King, Jr. Day, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day and the day following Thanksgiving Day, Inaugural Day, and Christmas Day. All holidays shall be honored on the same day that the Federal Government observes said holiday.

**TWELFTH:** The following working conditions, in addition to those already set forth, shall apply to all employment:

(a) The Foreman on any job covered by this Agreement shall be a competent stone or marble mason from the Union. The employer shall be the sole judge of competency.

(b) The first employee covered by this Agreement on the job site after the Foreman shall be the Steward until such time as the Field Representative(s) appoints the Steward. In no case shall a Steward be discharged, laid off or otherwise terminated, or transferred from the job before investigation can be made and mutually agreed upon by the Union's Field Representative(s).

(c) The cleaning of new stone work or pre-cast concrete shall be in such a manner that at least 50% of the men so employed are masons, pointers, cleaners, or caulkers. With respect to the cleaning, caulking, pointing or cutting out of all joints, all men so employed shall be stonemasons, pointers, cleaners, or caulkers. Bird proofing is the work of the same trades and wages for all such workmen shall be the same as those established herein for stonemasons.

(d) A mason shall be employed to supervise the handling, loading and unloading of all cut stone except for such activities in a local manufacturing plant.

(e) A mason shall be employed on each power derrick of any description when in use for the purpose of handling stone. This man must remain on the ground and shall be in charge of the selecting and hooking on of all stone. The foreman shall not hold this position except in cases where the Union cannot supply a man for this purpose or when adverse weather conditions prevent the job from being manned.

(f) Mason's tools used on this job shall be sharpened by the employer at his expense. Broken and worn out drills or other tools shall be returned to the Employer in order to obtain replacements.

**THIRTEENTH:** In the event that questions or differences shall arise as to the interpretations of matters covered by this Agreement, such differences shall, in the first instance, be resolved jointly by the Union and the Employer. In the event that the matter cannot be settled within three days as described above, then such matters shall be referred to an independent arbitrator jointly chosen from a mutually agreeable source, such as the Federal Mediation and Conciliation Service of the American Arbitration Association. This independent arbitrator shall hear the dispute as soon as practicable and render his decision that shall be binding on both parties to this Agreement. Pending an arbitrator's decision, there shall be no strike, lockout, work stoppage, or slowdown. The expenses of the arbitrator shall be borne equally by the Union and the Employer.

**FOURTEENTH:** The Union shall not be obligated to furnish any workmen to any employer, unless:

(a) The Employer carries Workmen's Compensation insurance and such other insurance as may be required by the laws of the District of Columbia and states and commonwealths within the jurisdiction of the Union and shall furnish satisfactory proof thereof to the Union.

(b) The Employer has the proper local licenses to do business in the jurisdiction where the work is to be performed and that the Employer has sufficient equipment to enable the workmen to perform their duties safely and efficiently.

**FIFTEENTH:** Both parties to this Agreement agree to encourage and promote safe working conditions and practices and to abide by existing regulations in the jurisdiction where the work is being performed. If any employee fails to use safety or protective equipment provided him by the Employer, or, to abide by

safe working procedures once they have been brought to his attention by his foreman or supervisor, such failure shall be the cause for immediate discharge.

**SIXTEENTH:** It is agreed by the parties hereto that no less than two months prior to the expiration of this Agreement, they shall meet in joint sessions for the purpose of making a new Agreement; this Agreement, however, shall remain in full force and effect until the date set herein for the expiration thereof.

**SEVENTEENTH:** The stonemason foreman has the discretion to assign two men to set a stone over five feet in height by eighteen inches, or more, wide. If the decision is contested by the contractor, a review will be set up between the executive board and the contractor.

**EIGHTEENTH:** If the Local Union is unable to fill an employer's request for qualified manpower after three days' notice, the Employer may employ applicants from any other available source. The local Union shall refer all applicants to employers without discrimination against any applicant by reason of membership in their local Union, or because of his or her race, color, creed, religion, sex or national origin.

**NINETEENTH:** It is further agreed that if any clause of provision of this Agreement shall be declared by any court of competent jurisdiction to be unenforceable for any reason, such decision shall not render this Agreement null and void, or in any way affect its term except that particular clause or provision that may be declared offending, and the remainder hereof shall remain in full force and effect.

**TWENTIETH:** It is agreed by both parties to this Agreement that no strike or lockout shall be ordered against either party, and that the grievance procedure shall be the sole remedy available to either party seeking redress of grievances under this Agreement. However, the Union specifically reserves its right to strike over non-payment of wages and/or fringe benefit contributions. The Union waives its right to engage in a sympathy strike, except where faced by a picket established by another BAC affiliate. Further, at a job site where a valid reserved gate system has been established, and the Union employer is not the primary employer involved in that dispute, the Union will direct its members to enter that job site through the neutral gate.

**TWENTY-FIRST:** Any employer not maintaining a regular and permanent place of business within the jurisdiction of the local Union may be required to post a cash bond or other bonds in the discretion of the Trustees of the Pension Fund and the Health and Welfare Fund in the amount of 10% of the value of the contract to secure the payments of the amounts due the Funds. The term "Regular and Permanent Place of Business" shall mean any location held in the name of the Employer within the jurisdiction of the Metropolitan Area of Washington, DC as defined in the Constitution of the Union wherein the Employer has maintained an active presence for at least three months and wherein the Employer maintains a telephone in active service listed in the name of the Employer and an office staff from 7:00 a.m. to 5:00 p.m., Monday through Friday through the term of the contract. The Union will refuse to furnish workmen

8

to any Employer required by the Trustees to furnish a bond or bonds as above set forth and who shall not have posted such bonds.

**TWENTY-SECOND:** In no event shall the Employer be required to pay higher rates of wages, or be subject to more favorable working rules than those established by the Union for any other Employer engaged in work covered by this Agreement.

**TWENTY-THIRD:** Employee benefit bonds: The Collective Bargaining Agreement provides for the Employer to make payment on a monthly basis to the Fund Administrator of certain contributions for pension, health and welfare, apprenticeship and related employee benefits pursuant to the Collective Bargaining Agreement.

    (a) Duration of Bond: Until the Employer shall establish that it has made full and prompt payment as required by the Collective Bargaining Agreement of monthly contributions for such employee benefits for a period of twelve consecutive months, the Employer agrees to and shall maintain a bond for one of the following periods, whichever is longer:

        1. a twelve (12)-month payment period; or,

        2. for the full duration of the first large contract.

    (b) Amount of Bond: The amount of the bond shall be ten percent (10%) of the first large contract, with a surety acceptable to Bricklayers and Allied Craftworkers Local #1 MD, VA & DC, to guarantee the payment of contributions due to the trust funds under the Collective Bargaining Agreement. The existence of such a bond shall not relieve Employer of its obligation to make full and prompt payment of the monthly contributions required of the Collective Bargaining Agreement.

    (c) Termination of Bond after Timely Contribution Are Paid for Entire Duration of Bond: Upon such time as the Employer shall have made contributions for the appropriate bond period contained in this Addendum – either twelve consecutive timely contributions, or monthly contributions for the full duration of the first large contract – for all benefits as set forth under the Collective Bargaining Agreement, then the Employer shall have the right to terminate and withdraw the bond. However, in the event the Employer shall subsequently during the term of the Collective Bargaining Agreement become delinquent and fail to submit timely monthly contributions under the terms of the Collective Bargaining Agreement, then the Employer shall again be required to post the bond set forth above for a twelve-month period, or for the duration of the largest contract then in effect, whichever is longer, until such time as the Employer shall have again made timely contributions under the Collective Bargaining Agreement for a period of twelve consecutive months, or for the duration of the largest contract then in effect, whichever is longer.

(d) Bond Notice Requirements: The Union shall provide a copy of all bonds within ten (10) days after execution to counsel for the Funds, McChesney & Dale, P.C., 4000 Mitchellville Rd., Ste. 222B, Bowie, MD 20716

**TWENTY-FOURTH:** This contract shall be in effect as of May 1, 2001 and shall continue in force and effect to and including April 30, 2004.

**Bricklayers & Allied Craftworkers**
**Local #1 MD, VA & DC:**

_____
SIGNATURE OF AUTHORIZED UNION OFFICIAL

_____5-1-01_____
DATE

**Employer:**

_____
SIGNATURE OF AUTHORIZED COMPANY OFFICIAL

_____September 18, 2001_____
DATE

____Brisk Waterproofing Co._____
COMPANY NAME

__1508 Marblewood Ave, Capitol Hghts, MD 20743__
ADDRESS

____301-925-9383   301-925-4265____
TEL/FAX

**Washington Chapter**
**Stone, Marble & PCC Rates**

*Wages in effect May 1, 2001 - April 30, 2002*

| | Wage | H&W | Local Pension | IU Pension | App. & Training | IMI | CPP | Total | Local Pac | BAC PAC | Local ch-off | IU ch-off | Total ch-off |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100% | $ 24.62 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 32.95 | $ 0.02 | $ 0.01 | $ 0.82 | $ 0.33 | $ 1.15 |
| 90% | $ 22.16 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 30.49 | $ 0.02 | $ 0.01 | $ 0.76 | $ 0.25 | $ 1.01 |
| 80% | $ 19.70 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 28.03 | $ 0.02 | $ 0.01 | $ 0.70 | $ 0.25 | $ 0.95 |
| 70% | $ 17.23 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 25.56 | $ 0.02 | $ 0.01 | $ 0.64 | $ 0.25 | $ 0.89 |
| 60% | $ 14.77 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 23.10 | $ 0.02 | $ 0.01 | $ 0.58 | $ 0.25 | $ 0.83 |
| 55% | $ 13.54 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 21.87 | $ 0.02 | $ 0.01 | $ 0.55 | $ 0.25 | $ 0.80 |
| 50% | $ 12.31 | $ 4.10 | $ 2.80 | $ 1.00 | $ 0.35 | $ 0.05 | $ 0.03 | $ 20.64 | $ 0.02 | $ 0.01 | $ 0.52 | $ 0.25 | $ 0.77 |

Distribution of $1.65 raise: Wages - $1.35, Local Pension - $.25, IMI - $.05
There is a 15% night differential

Travel pay: 25-50 miles = $9.00/day, more than 50 miles-less than 75 miles = $18.00/day, more than 75 miles = $18.00/day plus full room and board

$1.65 raise May 1, 2002, $1.65 raise May 1, 2003
The distribution of these raises to be determined by the membership at the April Chapter Meeting

This contract expires April 30, 2004

## ADDENDUM ONE TO THE STONE AND MARBLE MASONS COLLECTIVE BARGAINING AGREEMENT (WASHINGTON CHAPTER)

Between

**BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL NO. 1, MD, VA, AND DC**

AND

_____
NAME OF CONTRACTOR

**EFFECTIVE:** _____

This Addendum is entered into by and between Bricklayers and Allied Craftworkers Local No. 1, MD, VA, and DC and _____, Employer, covering all Stone and Marble Masons work in the Metropolitan area of Washington, D.C., and is incorporated into and becomes a part of the Collective Bargaining Agreement between the parties hereto.

**Employee benefit bonds.** The Collective Bargaining Agreement provides for the Employer to make payment on a monthly basis to the Fund Administrator of certain contributions for pension, health and welfare, apprenticeship and related employee benefits pursuant to the Collective Bargaining Agreement. Until the Employer shall establish that it has made full and prompt payment as required by the Collective Bargaining Agreement of monthly contributions for such employee benefits for a period of twelve consecutive months, the Employer agrees to and shall maintain a payment bond in the amount of _____ dollars, with a surety acceptable to Bricklayers and Allied Craftworkers Local No. 1 MD, VA, DC, to guarantee the payment of contributions due to the trust funds under the Collective Bargaining Agreement. The existence of such a bond shall not relieve Employer of its obligation to make full and prompt payment of the monthly contributions required of the Collective Bargaining Agreement. Upon such time as the Employer shall have made twelve consecutive timely contributions for all benefits as set forth under the Collective Bargaining Agreement, then the Employer shall have the right to terminate and withdraw the bond, provided however, in the event the Employer shall subsequently during the term of the Collective Bargaining Agreement become delinquent and fail to submit timely monthly contributions under the terms of the Collective Bargaining Agreement, then the Employer shall again be required to post the bond set forth above for a twelve month period until such time as the Employer shall have again made timely contributions for a period of twelve consecutive months under the Collective Bargaining Agreement.

_____
Date

_____
Date

_____
Employer

_____
Bricklayers & Allied Craftworkers Local #1